The following is the PDF of an official transcript. Official transcripts may be filed in CM/ECF only by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA, )
)
Plaintiff, ) CRIMINAL ACTION FILE
v. ) NO. 1:22-CR-00283-VMC-CMS
)
RAHIM MOHAMED et al., )
) TELEPHONE CONFERENCE
Defendants. )
_______________________________)

---

BEFORE THE HONORABLE VICTORIA M. CALVERT

TRANSCRIPT OF PROCEEDINGS

MAY 21, 2024

---

*Proceedings recorded by mechanical stenography and computer-aided transcript produced by*

WYNETTE C. BLATHERS, RMR, CRR
Official Court Reporter
2114 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, Georgia 30303
(404) 215-1547

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | CHRISTOPHER J. HUBER<br>TAL C. CHAIKEN<br>Office of the U.S. Attorney<br>Northern District of Georgia<br>600 United States Courthouse<br>75 Ted Turner Drive SW<br>Atlanta, Georgia 30303 |
| For the Defendant Christophe Merani: | CATHERINE C. SULLIVAN, ESQ.<br>CHARLES P. BORING, ESQ.<br>Robbins Alloy Belinfante Littlefield LLC<br>500 14th Street NW<br>Atlanta, Georgia 30318 |
| For the Defendant Glenn Laken: | AMANDA R. CLARK PALMER, ESQ.<br>DONALD F. SAMUEL, ESQ.<br>Garland, Samuel & Loeb, P.C.<br>3151 Maple Drive NE<br>Atlanta, Georgia 30305 |
| For the Defendant Phillip Sewell: | BRIAN MENDELSOHN, ESQ.<br>The Mendelsohn Ertel Law Group LLC<br>101 Marietta Street NW<br>Suite 3325<br>Atlanta, Georgia 30030 |
| For the Defendant Zoltan Nagy: | BRANDON A. THOMAS, ESQ.<br>The Law Office of Brandon A. Thomas<br>1 Glenlake Parkway<br>Suite 650<br>Atlanta, Georgia 30328 |
| For the Defendant Richard Tang: | CAITLYN V. WADE, ESQ.<br>Federal Defender Program<br>101 Marietta Street NW<br>Suite 1500<br>Atlanta, Georgia 30303 |

Tuesday Morning Session

May 21, 2024

9:30 a.m.

- - -

P R O C E E D I N G S

THE COURT: Good morning, counsel. We are here in the case of the United States v. Mohamed et al., Case No. 1:22-CR-283. I'm just going to go down the list and ask for appearances. Who is on the call on behalf of the United States?

MS. CHAIKEN: Good morning, your Honor. This is Tal Chaiken for the United States.

MR. HUBER: And Chris Huber as well, your Honor.

THE COURT: All right. Good morning to both of you.

And on behalf of Richard Tang?

MS. WADE: Good morning, Judge. Caitlyn Wade on behalf of Richard Tang.

THE COURT: Good morning, Ms. Wade.

On behalf of Phillip Sewell?

MR. MENDELSOHN: Good morning, Judge. Brian Mendelsohn on behalf of Mr. Sewell.

THE COURT: Good morning, Mr. Mendelsohn.

On behalf of Zoltan Nagy?

MR. THOMAS: Good morning, your Honor. I'm Brandon Thomas for Zoltan Nagy.

THE COURT: Good morning, Mr. Thomas.

And on behalf of Mr. Merani?

MR. BORING: Good morning, Judge. Chuck Boring on behalf of Mr. Merani, and Cate Sullivan is also on the call on behalf of Mr. Merani.

THE COURT: All right. Good morning to both of you.

And then, finally, on behalf of Mr. Laken?

MR. SAMUEL: Good morning, your Honor. This is Don Samuel, and Amanda Clark Palmer is also on the phone.

MS. CLARK PALMER: Good morning.

THE COURT: Good morning to both of you.

Thank you all. I half expected that this would not go through on the date that I set it, so I appreciate you all being available for this quick call to discuss scheduling a trial in this matter.

I think it makes sense to start with the government. My questions are to confirm what the length of the trial would be, whether the government has any position on whether I would need to try this case in the ceremonial courtroom and then, of course, the timing in terms of when you-all would be ready to proceed to trial.

MS. CHAIKEN: Your Honor, this is Tal Chaiken for the government. As far as the length of the trial, at this point with the defendants that are remaining, we're anticipating between two to three weeks.

As far as the location for the trial, obviously we'd defer to the Court. I think at this point there are five defendants going to trial, so at least based on my experience, the approximate number of defendants it's likely too large for the standard courtrooms. So I think we would need to do it in the ceremonial courtroom, assuming all five defendants proceeded to trial.

As far as the timing of the trial, your Honor, we had been hoping for some guidance from the Court and the other parties on that because our understanding is that Ms. Wade is leaving for an extended leave in the next couple of months, and so we weren't sure whether the Court was trying to fit it in before then or whether we would be looking out into next year. Obviously, if it's after Ms. Wade returns from leave, we would be ready, you know, if we're looking into next year.

THE COURT: Okay. Before I turn to defense counsel, when you say two to three weeks of trial, is that just for the government to present its case?

MS. CHAIKEN: Yes.

THE COURT: Okay. Let me turn to Ms. Wade because I am aware that she does have an upcoming leave. So, Ms. Wade, what are your thoughts in terms of the timing of the trial?

MS. WADE: So my plan as of now is that I will be on leave beginning the beginning of September. Given that the case could be heard at the earliest probably the middle of

July and this is a two- to three-week case, it would be -- just for the government's case, I think it would be risky to be trying it getting so close to when I would be due to leave. So my request would be that this be scheduled sometime in 2025.

I know that that is -- that several of the defendants have been requesting that this case go forward for many months, if not years now, and I understand that that is an inconvenience. But I think that it is very risky to be trying a case at eight to nine months pregnant that is going to be this long. There's just a lot that could go wrong with that.

I also have some concerns that I can address regarding mine and Mr. Thomas's ability -- mine and Mr. Thomas's clients' ability to view the discovery, but I don't know that we can get into that just yet.

THE COURT: When are you planning to come back from leave?

MS. WADE: So my leave would be basically September 1st to the new year, so January 1st -- not January 1st because that's a holiday but basically the start of the new year.

THE COURT: All right. Let me hear from Mr. Mendelsohn. What are your thoughts?

MR. MENDELSOHN: Yeah, that tends to work with my schedule. I'm pretty well tied up through August with other trials so I -- least I would be freed up would be September.

And given Ms. Wade's situation, the beginning of the year would be fine for me.

THE COURT: All right. Mr. Thomas, what are your thoughts?

MR. THOMAS: Your Honor, I am available early 2025. I don't have anything scheduled, and as Ms. Wade just said, at some point I did want to discuss this issue, which is very pressing for my client who -- I mean, ordinarily, you know, a defendant has a right to view the discovery, and I want to give it to him. But I'm not able to, and that's a big problem.

THE COURT: Well, let me deal with scheduling first. Ms. Sullivan or Mr. Boring, what are your thoughts on scheduling a trial?

MR. BORING: We'll obviously be available early 2025. I don't have anything on the books yet. Of course, I totally understand Ms. Wade's situation, you know, if it should be tried in August and putting her at risk, you know, or the trial at risk. However, we do have grave concerns that we've been asking for it to be tried for a while now, and we're looking at another calendar year before it's even possible that we go to trial.

So we'll be available, but, of course, our preference would be to try it as soon as possible.

THE COURT: Understood. And then what about

Ms. Clark Palmer or Mr. Samuel, what are your thoughts?

MR. SAMUEL: January is fine with us.

THE COURT: All right. Well, it looks like it makes sense, even though I understand Mr. Merani's position has been consistent, but it makes sense to just schedule it in January. And it looks like January 20th is available. The ceremonial courtroom is available if we need it, and so that could accommodate everyone, if all five defendants we're discussing actually proceed to trial.

So unless there is any objection beyond the one that Mr. Boring has raised for his client, I will specially set this case for January 20th.

MR. HUBER: Thank you, Judge.

MS. CHAIKEN: Thank you, Judge. That works for the government.

THE COURT: Okay. I'll get an order to that effect.

It seems like maybe we should all be planning for four weeks in our schedule because I don't yet know how much evidence the defendants might put up. Would an additional week -- well, let me ask it this way: Is there anyone on the defense side who thinks that an additional week put aside for trial would not be enough? Okay. No one has responded, so I'm going to take that as everyone agreeing that an additional week, if we need it for defense to present evidence, will be enough.

Putting aside the discovery issues that I believe Ms. Wade and Mr. Thomas want to talk about, is there anything else that we need to talk about before I let counsel for the other defendants drop off the call? Okay. No one has said anything. So, counsel for Mr. Sewell and Mr. Merani and Mr. Laken, if you'd like to drop off, you can.

MR. BORING: Thank you, your Honor.

MS. SULLIVAN: Thank you.

MR. SAMUEL: Thank you, Judge. Have a good day.

THE COURT: You too. Bye-bye.

MR. MENDELSOHN: Thank you, Judge. I'm just going to stay on on behalf of Mr. Sewell.

THE COURT: Oh, sure. All right. So I feel like I'm not sure if this is something you all have discussed with the government, Ms. Wade and Mr. Thomas, and/or discussed it when you were in front of Judge Salinas for the pretrial conference a couple of weeks ago.

I don't know if I'm the right person, but I will hear what the -- well, the issue seems to be that because your clients are residing in another country, they have not been able to get their discovery, and so I guess I'm just not sure what the government's position is on this. And I actually don't know the volume of the discovery at issue either.

MR. THOMAS: Okay. So the discovery -- this is Brandon Thomas on behalf of Zoltan Nagy. The discovery in

this case is quite large, basically 5 terabytes. Collectively the defense counsel determined that it's really not reviewable in the state that it's been provided by the government, and we just couldn't go through it. So what happened is we were able to get Casepoint, which is a discovery platform, and the discovery was uploaded to Casepoint so that the attorneys can go through it.

The government, which they can speak to -- they'll know better than I do -- they're on a different platform. I believe it's called Relativity. So they have their own platform for viewing discovery. Casepoint is our platform for viewing discovery.

The point is I did request on a behalf of Mr. Nagy because he's very adamant that he wants to view the discovery for himself and not just the selected pieces of discovery that I'm sending to him. He wants to see everything. So I asked Casepoint can you please give my client some type of access. And they tried to do it, and then they realized, they said, oh, I didn't know if you were in Canada, nobody can access this from Canada.

Best that I can tell -- and I don't know that there's something that the Court can do or not, but best that I can tell, this is a contractual issue between the federal government and Casepoint, the discovery platform. And I think it's somewhere in the contract where it says basically it

would not be used outside the United States.

So I don't know if, for example, the Court issued an order directing somehow that the defendant be allowed to view the discovery while outside the United States, I don't know if that would fix it or not. Like, best I can tell it's some type of contractual issue. I don't know that that involves the government. When I say the government, I literally mean like the U.S. Attorney's Office. I think it's the U.S. Office of Administrative Courts and Casepoint.

THE COURT: Ms. Wade, do you have something to add?

MS. WADE: This is Ms. Wade, Judge. I believe that what Mr. Thomas has said is a correct recitation of the facts that we're dealing with. This is only an issue that we learned of recently. I had been reviewing -- I've been able to review discovery, even Casepoint, and had been going over very, like, small sections of discovery with my client, and now that we're potentially moving towards trial, I didn't want him to be able to have access to all of it and be able to interact with it on Casepoint because otherwise there are several million individual files, which is just not practical to have a client interact with, which is why we got Casepoint to begin with.

I did just learn through Mr. Thomas and through working with the USAO that we are not going to be able to have our clients access Casepoint from Canada. Since we already

had this call scheduled, Mr. Thomas and I had discussed letting the Court know about the issue.

I personally was going to try to work with the government and also work with the Casepoint people and talk a little bit more about the contract to see if there is a solution we can come up with. But I wanted to preview it to the Court so that if we within a couple of weeks need the Court to take some action, I just wanted the Court to be aware of what's going on because at this point I'm not aware whether a court order would make any difference. So I just wanted to use this time we already had together to kind of preview the issue.

It would be my position that I'm not necessarily asking the Court to do anything just yet but that I might be asking for that shortly once I find out a little more information about how to rectify this issue.

THE COURT: Okay.

MR. MENDELSOHN: Judge, this is Brian Mendelsohn. If I could give you maybe a little bit of insight on some of this. Basically in large discovery cases within the CJA and federal defender system, the Administrative Office of the Courts has a contract with a document review company called Casepoint. And so with that the AO pays Casepoint, which is something like $7,000 a month, to store the documents and make them available to defense counsel. And so since we have a

large defendant case with a large amount of discovery, we come under the administrative office's contract which allow us to use Casepoint. But as Mr. Thomas and Ms. Wade have explained, the contract that the AO has with Casepoint limits it to use inside the United States.

Given that that's a contractual issue, the answer may not be ordering Casepoint to open it up, but it may be the Court authorizing funds for us to enter into a contract independently with Relativity. You know, that could be five, six, seven, ten thousand dollars a month or relatively pretty expensive, but that may be where we have to go if it turns out that Casepoint just isn't usable.

THE COURT: All right. I appreciate you-all previewing the issue for me.

Is there anything that Mr. Huber or Ms. Chaiken want to add to this discussion?

MS. CHAIKEN: Your Honor, this is Ms. Chaiken. I just wanted to make sure that the record is clear on this, that Mr. Thomas's email to the Court yesterday is the first time that we had heard anything about this. I can see that the email between Mr. Thomas and Casepoint is dated from back in February, early February of this year, but we had not been made aware of this issue. It was not raised at the pretrial conference with Judge Salinas. I think it may be appropriate for us to work with Judge Salinas to see if there's something

that we can do to resolve this issue.

I think there was mention made of the discovery being produced in a format that was not reviewable. You know, as is standard in these types of large volume productions, we produce them with a load file. They're obviously -- the documents are obviously not meant to be opened one by one from the load file, you know, page by page. They are meant to be loaded into a discovery platform, and, you know, we don't control Casepoint to that contract. We're not involved in the decision of whether or not it can be accessed from outside of the United States.

So I'm not sure that there's much of anything that me or our office can do on this front, but we're, you know, certainly willing to talk with defense counsel or Judge Salinas or with you about what could be done to get these defendants access.

THE COURT: Thank you for that. It does seem like at this point it's a little early for me to be making any rulings on it, as Mr. Thomas sort of suggested, and it does -- and I'm not even sure, as Ms. Wade stated, that a court order would mean anything to the other, case -- Relativity was coming to mind, but I'm thinking of the other one, Casepoint. Excuse me. But if you-all think you need the Court's intervention after maybe speaking to the AO about it and maybe your IT and house IT people, then let me or Judge Salinas know.

Judge Salinas sort of still has the case as to Mr. Tang and -- is it Mr. Nage, I've been saying his name incorrectly -- Mr. Nagy. But I'm here if there's something I can do. It seems to me that this can't be the first time that defense counsel has a client in another country, and so maybe there's some example somewhere else of what has been done to assist in this situation.

If you need me, just reach out to Ms. Shanks or file something on the docket, but it does sound like you-all can confer a little bit more.

MS. CHAIKEN: Judge Calvert, this is Tal Chaiken. I just wanted to flag that I believe January 20th is Martin Luther King Day.

THE COURT: Thank you. So we would start that following --

MS. CHAIKEN: Yes.

THE COURT: All right. Thank you. So it would be January 21st. I'll do an order related to setting the trial date once we confirm it with Jury that that is a good date.

Is there anything else anyone wants to discuss?

MS. CHAIKEN: Nothing further from the government, your Honor. Thank you.

MS. WADE: Nothing on behalf of Mr. Tang.

MR. MENDELSOHN: Nothing --

MR. THOMAS: Nothing on behalf of Mr. Nagy, your

Honor.

THE COURT: And, Mr. Mendelsohn, I heard you. Nothing on behalf of Mr. Sewell.

All right. Well, you all have a good day, and I hope you can make quick progress with the discovery issue soon. Thank you. Bye-bye.

MR. HUBER: Thank you, Judge.

MS. CHAIKEN: Thank you, Judge.

(Whereupon, the proceedings were adjourned at 9:54 a.m.)

\- - -

REPORTERS CERTIFICATE

I, Wynette C. Blathers, Official Court Reporter for the United States District Court for the Northern District of Georgia, with offices at Atlanta, do hereby certify:

That I reported on the Stenograph machine the proceedings held in open court on May 21, 2024, in the matter of UNITED STATES OF AMERICA v. RAHIM MOHAMED et al., Case No. 1:22-CR-00283-VMC-CMS; that said proceedings in connection with the hearing were reduced to typewritten form by me; and that the foregoing transcript (Pages 1 through 16) is a true and accurate record of the proceedings.

This the 28th day of June, 2024.

/s/ ________________________________
Wynette C. Blathers, RMR, CRR
Official Court Reporter