IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GLENN LAKEN<br>ZOLTAN NAGY | Criminal Indictment<br><br>No. 1:22-cr-283-VMC |

## GOVERNMENT'S CONSOLIDATED MOTIONS IN LIMINE

The United States of America, by its counsel, Theodore S. Hertzberg, United States Attorney for the Northern District of Georgia, and Alex R. Sistla, Assistant United States Attorney, hereby files its consolidated motions *in limine*.

**I. Motion *in limine* to preclude testimony and argument regarding the absence of "economic loss."**

In *Kousisis v. United States*, 605 U.S. 114 (2025), the Supreme Court held that "a fraud is complete when the defendant has induced the deprivation of money or property under materially false pretenses." *Id.* at 127 n.5. Thus, an "'injury' has occurred" that can support a fraud conviction "when a fraudster 'obtains from an owner . . . property which he would not have otherwise parted with upon the terms which is thus to accept." *Id.* "The wire fraud statute, the Court explained, 'is agnostic about economic loss.'" *United States v. Smith*, 150 F.4th 832, 844 (7th Cir. 2025) (quoting *Kousisis*, 605 U.S. at 124). *Kousisis* thus confirmed that the government may proceed on a "fraudulent-inducement theory;" that is, "a defendant commits federal fraud whenever he uses a material misstatement to trick a victim into a contract that requires handing over her money or property." *Kousisis*, 605 U.S. at 118; *see also id.* at 157 ("The Court today rightly rejects

petitioners' request to graft an economic-loss requirement onto the federal wire fraud statute.") (Sotomayor, J., concurring). In so holding, *Kousisis* overruled *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016), which held that a victim is not defrauded when they receive "the benefit of the bargain" and thus the government needed to show that the defendant intended to cause a victim "net pecuniary loss." *Kousisis*, 605 U.S. at 124 ("[A] defendant violates § 1343 by scheming to 'obtain' the victim's 'money or property,' regardless of whether he seeks to leave the victim economically worse off."); *Smith*, 150 F.4th at 844 ("Because *Kousisis* forecloses the defendants' essential element of the bargain argument, we easily conclude based on well-established precedent that spoofing constitutes a scheme to defraud within the meaning of the wire and commodities fraud statutes.") (citations omitted); *see also United States v. Constantinescu*, No. 24-20143, ___ F.4th ___, 2025 U.S. App. LEXIS 25676, at **7-10 (5th Cir. Oct. 2, 2025).

It would be therefore legal error to permit Defendants to argue that they did not act with the requisite intent to defraud unless there is evidence that they intended to "cause loss or injury." In other words, Defendants should not be permitted to argue that they cannot be convicted of the alleged fraud offenses because they did not "aim to inflict economic loss" on the account holders (or brokerage firms). *Kousisis*, 605 U.S. at 122.[1]

---

[1] It would be equally improper to permit Defendants to argue "no harm, no foul" as a defendant to charges because the individuals whose accounts were compromised were made whole by Brokerage Company-1 (or other online brokerage firms). *See* Doc. 1, Indictment ¶ 20 (noting that online brokerage firm victims suffered the losses after resorting the compromised customer accounts).

**II. Motion *in limine* to preclude evidence or argument concerning: (a) the penalties and consequences associated with the charged offenses; (b) general good character, and/or specific instances of good conduct; (c) the government's charging decisions; and (d) any matters that could promote jury nullification.**

The Constitution provides criminal Defendants with the general right to present evidence and call witnesses in their own favor. *See, e.g.*, *United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004). But the right to present a defense is not absolute and without limits. *Id.* at 1365–66. Indeed, it "is axiomatic that a defendant's right to present a full defense does not entitle him to place before the jury irrelevant or otherwise inadmissible evidence." *United States v. Anderson*, 872 F.2d 1508, 1519 (11th Cir. 1989). The Constitution only demands that a defendant be permitted to present evidence that is relevant to an element of the charged offense or to an affirmative defense. *Hurn*, 368 F.3d at 1365–66; *United States v. Masferrer*, 514 F.3d 1158, 1161 (11th Cir. 2008) ("[W]here the proffered evidence does not bear a logical relationship to an element of the offense or an affirmative defense . . . a defendant has no right to introduce that evidence.") (quotation marks omitted).

Evidence "is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also* Fed. R. Evid. 402 ("Relevant evidence is admissible," while "[i]rrelevant evidence is not admissible"). And, even when evidence is relevant, courts may exclude that evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Trial courts enjoy "broad discretion to determine the relevance and

admissibility of any given piece of evidence." *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008).

### a. Penalty Evidence

First, the government requests that Defendants be prohibited from attempting to introduce evidence of or arguing about the potential penalties or collateral consequences associated with a conviction for the charged offenses.

It is well-settled that the "question of punishment should never be considered by the jury in any way in deciding the case." *United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991); *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) ("a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed'") (citation and footnote omitted); *United States v. Thigpen*, 4 F.3d 1573, 1577 (11th Cir. 1993) (recognizing the "established canon that juries are not to be informed of or concerned with the consequences of their verdicts"). And the Eleventh Circuit's pattern jury instructions reflect this well-settled law. *See* Eleventh Cir. Basic Instr. B10.2 ("You must never consider punishment in any way to decide whether the Defendant is guilty. If you find the Defendant guilty, the punishment is for the Judge alone to decide later.").

This analysis applies equally to the collateral penalties associated with a felony conviction—such as being prohibited from certain types of employment, losing the rights to possess firearms and vote, and removal from the United States. *See, e.g.*, *United States v. Muentes*, 316 F. App'x 921, 926 (11th Cir. 2009) ("A defendant is not entitled to an instruction informing the jury of the consequence of a guilt or innocence finding in terms of punishment"); *Thigpen*, 4 F.3d at 1578

("We . . . hold that the general rule against informing jurors of the consequences of a verdict governs such cases"); *United States v. Macrina*, No. 1:20-CR-216-SCJ, 2022 WL 4594993, at *1 (N.D. Ga. Sept. 30, 2022) (excluding "all arguments and evidence regarding Defendant's potential penalties and collateral consequences" because those matters are irrelevant to the jury's determination of guilt and innocence).

The rationale for excluding penalty evidence is straightforward—the penalties associated with a conviction are not probative of guilt or innocence. *See, e.g.*, *Shannon*, 512 U.S. at 579. Instead, evidence relating to the punishment and the collateral effects of a conviction serve only to compromise the verdict, confuse the jury, or invoke sympathy for the defendant. *See McDonald*, 935 F.2d at 1222.

The government therefore respectfully requests that the Court preclude Defendants from arguing or introducing evidence regarding the potential penalties he faces if convicted, including: (a) the maximum penalties associated with the charged offenses; (b) that he could be sentenced to prison; (c) that he will be prohibited from obtaining certain types of jobs, including in law enforcement and the military; (d) that he will no longer be able to vote or possess a firearm; and (e) that he may lose his pilot license and other credentials or clearances. *See United States v. Rogers*, 422 U.S. 35, 40 (1975); *Thigpen*, 4 F.3d at 1578.

### b. Good Character Evidence

Second, the government moves to exclude all evidence of Defendants' general good character and evidence of specific instances of good conduct.  Under the Federal Rules of Evidence, a defendant may present character evidence via

reputation or opinion testimony regarding lawfulness and often regarding truthfulness—and the prosecution is allowed to rebut the same. Fed. R. Evid. 405(a); *United States v. Reed*, 700 F.2d 638, 645 (11th Cir. 1983); *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981 (Unit A)) (lawfulness is pertinent trait in all criminal prosecutions).[2] But "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Consequently, when character is not an essential element of the offense, character evidence may only be presented through testimony as to reputation or by testimony in the form of an opinion. Fed. R. Evid. 405(a); *accord United States v. Solomon*, 686 F.2d 863, 874 (11th Cir. 1982).

A defendant therefore may not introduce evidence of possessing a generally good character. *See United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) (court properly excluded proffered testimony "to portray [defendant as having] a good character"); *cf. Hewitt*, 634 F.2d at 280 (prevailing view is that Rule 404(a) precludes a defendant from offering reputation or opinion testimony regarding his "general good character"); *United States v. Cochran*, 4:14-CR-022-HLM, Doc. 44 at 13 (N.D. Ga. November 17, 2014) (barring the defendant "from presenting evidence of his general good character").

Likewise, a defendant may not offer evidence of specific instances of good conduct or the absence of bad conduct. *United States v. Ellisor*, 522 F.3d 1255,

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent decisions of the Fifth Circuit, including Unit A panel decisions of that circuit, handed down prior to October 1, 1981.

1270-71 (11th Cir. 2008) ("specific acts of good character were inadmissible under [the] Rules"); *see also United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987) ("testimony as to the lack of prior bad acts is, in essence, testimony as to multiple instances of good conduct, and its admission would appear to violate a strict reading of Rule 405(a)"); *Government of Virgin Islands v. Grant*, 775 F.2d 508, 512 (3d Cir. 1985) ("testimony that one has never been arrested is especially weak character evidence; a clever criminal, after all, may never be caught"); *United States v. Morgan*, 2000 WL 1622748, at *10 (E.D. Pa. Oct. 20, 2000) (excluding evidence of lack of criminal history because: (1) "whether the defendant has broken the law before has virtually no bearing on whether he did so this time," (2) "such evidence may mislead the jury," and (3) the evidence may improperly cause the jury to be "overly sympathetic").

Likewise, "[e]vidence of good conduct is not admissible to negate criminal intent." *Camejo*, 929 F.2d at 613 (holding that defendant's refusal to work in one narcotics business was irrelevant and inadmissible prior "good act" when defendant charged with drug trafficking) (citing *Michelson v. United States*, 335 U.S. 469, 477 (1948)). The Eleventh Circuit has consistently affirmed the exclusion of defendants' prior good conduct evidence when offered to support a defense of lack of criminal intent. *See United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) (concluding that purported legitimate business activities were inadmissible in a fraud case); *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.") (citation omitted); *see also United States v. Marley*, 621 F. App'x 936, 941 (11th Cir. 2015) (defendant's attempt to justify his firm's

fraudulent invoices by asserting that he had performed unbilled work was inadmissible to negate his fraudulent intent); *United States v. Ly*, 543 F. App'x 944, 946 (11th Cir. 2013) (evidence that doctor properly treated certain patients inadmissible to demonstrate his state of mind in improperly dispensing controlled substances).

Based on these well-settled principles, Defendants should not be permitted to introduce evidence that he possesses a generally "good character"—such as his being family-oriented, religious, an active community participant, or an otherwise moral and ethical person. *See United States v. Bernard*, 299 F.3d 467, 476 (5th Cir. 2002) (approving court's sentencing instruction that jurors should not "consider the religious views of the defendants"); *United States v. Santana-Camacho*, 931 F.2d 966, 967-68 (1st Cir. 1991) (excluding evidence that defendant was a good family man and a kind man because it was not a trait relevant to the offense); *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (concluding that evidence of "bravery, attention to duty, perhaps community spirit were hardly 'pertinent' to the [charged] crimes"); *United States v. Morison*, 622 F. Supp. 1009, 1010–11 (D. Md. 1985) (holding that "patriotism" not relevant trait to charge).

Similarly, Defendants should not be permitted to put on evidence of specific acts of good conduct, including (a) caring for or providing financial support to his family members; (b) participating in religious services; (c) any charitable work or community service; (d) specific instances of honesty; (e) of the lack of prior bad acts; or (f) of any other specific instances of "good" conduct. *See, e.g.*, *Ellisor*, 522 F.3d at 1270; s*ee also Camejo*, 929 F.2d at 613 ("[P]roffered testimony

was merely an attempt to portray [the defendant] as a good character through the use of prior 'good acts.'"); *United States v. McMahan*, 394 F. App'x 453, 463 (10th Cir. 2010) ("[T]he district court correctly determined that although [defendant] was entitled to present character evidence, he could not do so by offering evidence of specific instances of his conduct"); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("[D]efendant may not seek to establish his innocence, however, through proof of the absence of criminal acts on specific occasions."); *United States v. Washington*, 106 F.3d 983, 999-1000 (D.C. Cir. 1997) (affirming exclusion of defendant police officer's commendations because they were neither "pertinent" nor probative of an essential element).

### c. Charging Decisions

Third, the government moves to exclude all evidence and arguments regarding its charging decisions. Such arguments are irrelevant because they do not rebut any of the elements of the charged offenses and are highly prejudicial because they serve no purpose aside from inviting jury nullification.

The Eleventh Circuit has recognized that the "Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." *United States v. Cespedes*, 151 F.3d 1329, 1332 (11th Cir 1998) (internal quotations omitted); *accord United States v. Armstrong*, 517 U.S. 456, 464 (1996). United States Attorneys "have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to take care that the laws be faithfully executed." *Cespedes*, 151 F.3d at 1332 (internal quotations omitted); *accord* U.S. CONST. art. II, § 3; see 28 U.S.C. §§ 516, 547.

As a general matter, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *accord Cespedes*, 151 F.3d at 1332; *see also United States v. Batchelder*, 442 U.S. 114, 124-25 (1979) ("Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints."). Any claim of selective prosecution is "not a defense on the merits to the criminal charge," *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000), and is "an issue for the court to decide, not an issue for the jury," *United States v. Jones*, 52 F.3d 924, 927 (11th Cir. 1995). The claim that others "could have been charged but were not" not only would implicate a host of legal issues and fact patterns far afield from the charges pending against the Defendants, but also is not a factual defense that bears upon whether the defendant is guilty of the crimes charged by the grand jury. *Smith*, 231 F.3d at 807; *see also United States v. Bickers*, 1:18-CR-0098-SCJ, Doc. 136 at 3–4 (N.D. Ga. May 18, 2020) (precluding defendant from presenting evidence or argument "that other individuals have not been charged for related conduct" and "that it is unfair that Defendant has been charged, while other individuals involved in related criminal conduct have not been charged"). Evidence that some other individual is currently uncharged has no probative value to the issues at trial and serves only to confuse or mislead the jury. *See* FED R. EVID. 402 and 403.

Likewise, the Defendants should be precluded from presenting evidence or arguments claiming that their conduct could have been handled through SEC administrative action or civil litigation instead of criminal prosecution. Evidence

about the availability of administrative remedies and civil penalties is irrelevant in a criminal case. *See United States v. Pate*, No. CR 118-008, 2019 WL 1244722, at *7 (S.D. Ga. Mar. 18, 2019) (excluding evidence that administrative remedies were available in health care fraud case because "the availability of administrative actions to CMS is largely irrelevant to the crimes at issue"); *United States v. Akhigbe*, No. 09-CR-151, 2009 WL 8633203, at *2 (D.D.C. Dec. 3, 2009) (granting government's motion in limine to exclude evidence of alternative remedies in health care fraud case because "the availability of civil or administrative remedies against the defendant is irrelevant"), *reversed on other grounds*, 643 F.3d 1078 (D.C. Cir. 2011); *see also United States v. DeMuro*, 677 F.3d 550, 565 (3d Cir. 2012) (court properly excluded evidence of civil tax remedy because "it opened the door to jury nullification, by inviting the jury to reason that the IRS should have continued to pursue the matter civilly rather than criminally"); *United States v. Buras*, 633 F.2d 1356, 1360 (9th Cir. 1980) (availability of civil remedies in a tax case "is irrelevant to the issue of criminal liability," and a jury instruction regarding civil remedies "would serve only to confuse the jury").

### d. Jury Nullification

Third, the government moves to preclude Defendants from attempting to introduce evidence or make arguments designed to induce jury nullification.[3]

---

[3] Jury nullification is defined as a "jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." BLACK'S LAW DICTIONARY, 2508 (10th ed. 2014).

Federal courts have uniformly excluded evidence and arguments that encourage jury nullification. *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983) (defendant's "jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath."); *see also United States v. Muentes*, 316 F. App'x 921, 926 (11th Cir. 2009) ("defense counsel may not raise arguments that would encourage jury nullification"); *United States v. Hall*, 188 F. App'x 922, 925 (11th Cir. 2006) ("[A] criminal defendant is not entitled to either an instruction or an argument for jury nullification").

The Eleventh Circuit has explained:

> A jury has not more 'right' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty,' and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

*United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) (quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983)); *see* Eleventh Cir. Pattern Jury Instr. (Criminal), Basic Instruction No. B2.1 ("You must follow the law as I explain it – even if you do not agree with the law").

A defendant "may [also] not argue jury nullification during closing argument." *Trujillo*, 714 F.2d at 106; *Muentes*, 316 F. App'x at 926; *Hall*, 188 F. App'x at 925.

Accordingly, the Court should preclude Defendants from attempting to introduce evidence or making arguments designed to encourage jury nullification. By way of example, the government moves to preclude evidence or arguments related to: (1) Defendants' financial status or to any financial hardship; (2) their mental health or medical conditions; (3) their familial obligations, such as care for an ailing parent; (4) allegations that the statutes at issue have been unfairly or unjustly applied in this case; and (5) suggestions that charges were brought based on improper factors. *See Funches*, 135 F.3d at 1409 (no error when court denies admission of evidence that would support nullification, "even if the evidence might have encouraged the jury to disregard the law and to acquit the defendant"); *United States v. Moss*, 297 Fed. App'x. 839, 841, (11th Cir. 2008) (defendant's testimony about motive properly excluded where it was intended to promote jury nullification). Such evidence is not relevant to the issues at trial, could promote jury nullification, and should be excluded.

### III. Motion *in limine* to preclude impeachment through investigative reports.

The government moves to preclude Defendants from cross-examining or seeking to impeach a witness with an investigative report that the witness has not signed or otherwise adopted.

Under the Federal Rules of Evidence, a witness may only be cross-examined and, where appropriate, impeached with his or her own prior statements. *See* Fed. R. Evid. 613. Indeed, the Supreme Court has long recognized that it would be "grossly unfair to allow the defense to use statements to impeach a witness

which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." *Palermo v. United States*, 360 U.S. 343, 350 (1959). After all, in preparing investigative summaries, law enforcement officers necessarily exercise discretion in drafting reports. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (recognizing that FBI 302s "have been deemed inadmissible for impeaching witnesses on cross-examination"), *abrogated on other grounds*, *United States v. Booker*, 543 U.S. 222 (2005); *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) ("The problem, in essence, is one of relevancy. If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible.").

Investigative reports are thus not the "statements" of the interviewed individuals.[4] *See Jordan*, 316 F.3d at 1252 ("[FBI 302s] are not Jencks Act

---

[4] Consequently, investigative reports are also not discoverable under the Jencks Act, although the Government has already and will continue to produce such reports to Torjagbo. *See United States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003); *United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) (holding that, absent evidence of adoption, FBI 302s "are not discoverable under … the Jencks Act"); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996) ("[T]he agent's notes and 302 report … are not covered by the Jencks Act."); *United States v. Roseboro*, 87 F.3d 642, 646 (4th Cir. 1996) (affirming ruling that "FBI 302 Report was not a Jencks Act statement"); *United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act."); *United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992) (holding that FBI reports "are not statements producible under the Jencks Act because they were neither signed nor adopted … and further because they are not a verbatim recital … but rather only an agent's summary."); *United States v. Foley*, 871 F.2d 235, 239 (1st Cir. 1989) ("302s are not substantially verbatim recitals … and recorded contemporaneously.").

statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness."). And courts have routinely held that these types of law enforcement reports cannot be used to cross examine or impeach interviewed parties if they are called as witnesses. *See, e.g.*, *United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993) ("[A] witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own."); *Almonte*, 956 F.2d at 29 (same).

Accordingly, the government moves to preclude Defendants: (a) from cross-examining or seeking to impeach witnesses with non-verbatim reports that have not been signed or adopted by the witness; and (b) from quoting, publishing, or suggesting to the jury that the contents of an investigative report is a statement of the witness.

## IV. Motion requesting that discovery related issues be addressed outside the presence of the jury.

To the extent that any discovery-related issues arise at trial, the government requests that those matters be addressed outside the presence of the jury. Discovery-related comments are irrelevant to the jury's function and may create the impression that one party has suppressed information to seek an unfair tactical advantage at trial. *See, e.g., United States v. Dochee*, 08-CR-108–4, 2009 WL 102986, *1 (N.D. Ill. Jan. 15, 2009) (excluding comments on discovery because "commentary on discovery matters by either party in the presence of the jury could create the impression that the opposing party is withholding information"). The parties can address any discovery-related issues outside the presence of the

jury with no resulting prejudice. *See United States v. Bickers*, 1:18-CR-0098-SCJ, Doc. 138 at 3 (N.D. Ga. May 21, 2020) ("The Court therefore requires that all comments relating to discovery issues be made outside the presence of the jury."); *United States v. Gray*, 2:07-CR-166, 2010 WL 1258169, *3 (N.D. Ind. Mar. 26, 2010) (granting "motion to preclude requests of discovery from witnesses or opposing counsel, moving the court for such discovery or otherwise commenting on discovery matters in the presence of the jury. Any necessary requests for or comments about discovery can be made outside of the jury's presence"). Moreover, doing so minimizes any potential prejudice to either party.

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court to grant its consolidated motions *in limine*.

Respectfully submitted,

THEODORE S. HERTZBERG.
*United States Attorney*


/s/ ALEX R. SISTLA
*Assistant United States Attorney*
Georgia Bar No. 845602
alex.sistla@usdoj.gov